.THE PEOPLE *v.* ORTIZ ET AL.

APPEAL from the District Court of Ponce.

No. 259.—Decided June 23, 1911.

CRIMINAL LAW—SUFFICIENCY OF INFORMATION—LANGUAGE OF STATUTE.—It is a well-established rule that an information is held to be sufficient if it charges the offense in the language of the statute, unless the particular circumstances of the crime require that it be drawn otherwise, as when certain facts are necessary to constitute the offense.

ID.—NEGLIGENCE.—Negligence, according to Judge Cooley, is the failure to observe, for the protection of "the interests of another person, that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury."

ID.—CONTRADICTORY EVIDENCE—CONCLUSION OF TRIAL COURT.—In cases where the evidence is contradictory, the conclusion of the trial court as to the guilt of the defendant shall not be reversed on appeal, unless it is shown that the court was actuated by passion, prejudice, or committed grave error.

ID.—SPEED OF TRAIN—EXISTENCE OF NEGLIGENCE.—In the absence of a statute or ordinance regulating the speed of trains, the running thereof at any speed does not constitute negligence *per se,* and the existence thereof depends on the circumstances of the case and the safety of passengers and pedestrians, this rule being applicable also to cases where the cars are propelled and not drawn by the locomotive.

ID.—USE OF TRACK—SWITCHES—CROSSINGS.—As a general rule, tracks are for the exclusive use of the company owning them, except the crossings on

public thoroughfares; and when trains are operated on the streets of a city commonly used by pedestrians and vehicles, it is the duty of the engineer to take precautions against collisions which would be unnecessary under other circumstances, because the presence of such pedestrians or vehicles on the track is to be presumed, and reasonable care should be exercised. When it is known or may be expected that persons are on the track, it is the duty of the company and of the employes to exercise ordinary care and precaution commensurate with the probabilities of an accident.

ID.—CONTRIBUTORY NEGLIGENCE OF PERSON KILLED.—The Penal Code provides punishment for those who wilfully or negligently cause the collision without regard to the negligence of the person killed, considering the conduct only of those in charge of the train, because in these cases the immediate cause of the accident is either wilfulness or negligence.

ID.—NEGLIGENCE OF ENGINEER AND CONDUCTOR OF TRAIN.—Upon examination of the evidence in this case, the Supreme Court held that neither the engineer nor the conductor of the train exercised reasonable diligence, but, on the contrary, that they were guilty of negligence.

The facts are stated in the opinion.

*Mr. Domingo Sepúlveda* for appellants.

*Mr. Jesús M. Rossy, fiscal,* for respondent.

MR. JUSTICE ALDREY delivered the opinion of the court.

The following information was filed in the District Court of Ponce against the appellants herein:

"The *fiscal* files this information against José Ortiz and Domingo Estepa, as the authors of a crime against public safety (felony), committed as follows:

"On February 3, 1910, the said José Ortiz and Domingo Estepa, as engineer and conductor, were in charge of a freight train of The American Railroad Company of Porto Rico running from this city of Ponce to the playa thereof within the judicial district of Ponce, P. R., and having entered the outskirts of said Playa of Ponce without taking precautions of any kind, and through their negligence and carelessness said train collided with a wagon upon which was Demetrio Cancio, said Cancio being dragged by the train and maimed in such a manner that he died immediately. This act is contrary to the law for such case provided and against the peace and dignity of The People of Porto Rico. Rafael Palacios, District *Fiscal.* The foregoing information is based on the sworn testimony of witnesses, and I solemnly believe that just cause exists for filing the same with the court. Rafael Palacios, District *Fiscal.*"

The trial being held, the court found both defendants guilty of the crime charged, and on April 14, 1910, they were

sentenced to one year's imprisonment at hard labor and the payment of costs. From this sentence the present appeal was taken.

We are of the opinion that the information is sufficient, because the language of the statute has been used in charging that through negligence they caused the collision of a train, resulting in the death of a human being.

It is a well-established rule that an information is held to be sufficient if it charges the offense in the language of the statute, unless the particular circumstances of the case require that it be drawn otherwise, as when certain facts are necessary to constitute the offense. (*People* v. *Neill,* 91 Cal., 465; cases cited in Pomeroy Codes of California, 345; 94 Am. Dec., 253–258, and notes.)

Now, then, negligence, according to Judge Cooley, is "the failure to observe, for the protection of the interests of another person, that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury." (29 Cyc., 415.)

Let us accept this definition and investigate the circumstances surrounding the act, what the defendants did, and what they should have done.

From the evidence contained in the statement of the case it appears that on the afternoon of February 3, 1910, José Ortiz and Domingo Estepa, as engineer and conductor respectively, were in charge of a freight train made up of an engine propelling four cars running from the city of Ponce to the playa thereof. Before reaching the playa the train passed through fields of tall cane and around a very sharp curve, due to which circumstances it was impossible to see from the train what happened in a certain street until a gate separating the same from the cane fields was reached.

At the head of said street and about 16 or 20 yards from the aforesaid gate the house of a Mrs. Llorens is situated. The railroad track runs about 3 yards distant from this house, and the street is a little over 12 yards wide in its entirety.

From all the evidence the uncontroverted fact is reached that on the day referred to in the information a cart loaded with coal was placed by the driver thereof, the coal man, in front of and near the house of Mrs. Llorens and across the track, and that the operation of unloading the same was being carried on under such conditions. At the moment the coal man unloaded a sack from the cart the train approached and, dropping the sack, the coal man jumped on the cart, took the reins, and endeavored to drive from the place where his cart was standing. He had no time to do this, as the train had arrived in front of the house of Mrs Llorens and the first car collided with one of the wheels of the wagon, dragging the same for 12 or 14 yards until one of the wheels thereof was broken, the coal man meeting his death 15 or 20 meters further on.

The contradiction between the evidence for the prosecution and that for the defense consists in that the three witnesses for the former maintain that the train which killed the coal man neither blew the whistle nor rang the bell; that it was not going slowly but with some speed; and in that they saw no one beside the track to signal the train, all averring that prior to the accident and after the same occurred, but not on the day it happened, trains were run slowly and with great care, and that it was customary to blow the whistle and ring the bell and for the conductor to walk before the train or to ride on the first car. Mrs Llorens adds that on feeling the approach of the train by means of the shaking of her house, and knowing that the coal man's cart was there and having heard neither the bell nor the whistle, she went to the porch to prevent an accident. The first thing she did was to try to see the conductor, but could not, and then she immediately commenced shouting at the engineer, which she continued to do until the engine arrived in front of the porch of her house. She saw the engineer with his hand on the throttle looking downward, and she continued to shout at him, but he did not hear her. When the engine arrived at the place in

front of where she was the engineer raised his eyes and then reversed the regulator, but the train had already struck the wagon and the man and did not stop until it reached the next house.

On their part the two defendants testified in regard to these particulars, as follows:

The engineer stated that at a distance of 150 meters from the outskirts of the playa he blew the whistle, as was his custom and his duty, and that the fireman, knowing that it was his duty to ring the bell, rang it; that the speed at which the train was running was 6 or 8 kilometers an hour, this being the speed of a man walking; that the conductor is obliged to alight from the train on reaching the gate, which he did, signaling immediately to him to stop, for which reason he reversed the engine and ordered the fireman to put on the brakes, the fireman having to abandon the bell; that he stopped the train a little beyond the gate, and that, although he was riding with his back towards the town, he looked backwards to see the conductor.

The conductor testified that when they arrived at the place where it was customary to blow the whistle the bell was rung and the whistle blown; that on reaching the gate he jumped from the train and, running forward, saw the cart and signalled to stop; that the train was going at the speed of a man walking.

The fireman stated that he is obliged to ring the bell at crossings and at entrances to towns; that the engineer blew the whistle at the place where there is a board (it is not specified what board), and that he then commenced ringing the bell; that he does not know if the collision had occurred when the engineer ordered the brakes; and that he did not see the conductor in the front car, where he rides.

The witness Soto, sergeant of Insular police, was not at the outskirts of the playa on that afternoon, and limits his statements to saying that locomotives enter the town with due

precaution, and that whenever he has seen a train enter the bell was ringing.

Finally, witness González began by saying that on that day he heard the bell; that some engineers ring it and others do not, and concluded with the statement that he heard the bell at a great distance, much further than the switch, and that it was not rung on entering the town.

It will be seen from the foregoing that the evidence is contradictory with respect to the points we have set forth. This conflict was decided by the trial judge, who heard the witnesses, in favor of those for the prosecution, as shown by the judgment of conviction; and we shall not disturb his decision because it has not been shown that he was actuated by passion, prejudice, or committed grave error, and with greater reason shall we abstain from so doing when from the study which we have made of the evidence we reach the same conclusion.

It appears from the record of the proceedings that an ocular inspection was made by the court, accompanied by the *fiscal* and counsel for the defense, to a part of which we have referred in the beginning of this opinion. In accordance with the record of the inspection, the same locomotive, with four cars coupled in the same manner as on the day of the accident, in charge of the defendants and the fireman accompanying them on said day, were placed at the disposal of the court.

The engine was run at the speed of a man walking, the conductor jumped from the last car before reaching the gate, and from there signalled the engineer, who shut off the throttle hurriedly while the fireman instantly put on the brakes, and in spite of which the train ran 25 or 30 meters before coming to a stop. It also appears that from the gate towards the playa there is a slight declivity in the land.

We now know the situation and condition of the track at that place; that the whistle was not blown nor the bell rung; that the conductor did not leave the train on reaching the

gate; that he was not seen afoot; and that the train was not running very slowly.

Do these acts constitute negligence on the part of the defendants, and can they in view thereof be made responsible for the crime of which they have been found guilty and for which they have been sentenced? Let us see.

This question comprises several others, as to what was the duty of the conductor and how he failed therein; what was the duty of the engineer and how he failed in its compliance; and also whether the evidence is sufficient to hold that negligence on the part of the defendants has been proved, and to base thereon a judgment of conviction.

The duty of the conductor and of the engineer was, in order to be diligent and not negligent, and considering the condition of the place, that which they stated in their testimony and have accepted as such; in other words, considering that they were rounding a very sharp curve through tall canes before reaching the gate and that the street could not be seen before arriving at the head thereof, and inasmuch as beyond the gate there is a declivity in the land, the engineer should have run the train so exceedingly slow that when the first car passed the gate and entered the street the train could have been stopped before causing injury to any person who may have been at the head thereof; he should have blown the whistle so that pedestrians would know of the proximity of the train, and for the same reason he should have rung the bell constantly or caused his fireman to do so, all this with greater reason on account of the condition of the place, the propelling of the four cars, and because riding with his back towards the town required more care and precaution.

On his part the conductor of the train, as the person in charge thereof, should not have permitted the failure to give such warning of the approach of the train, and if he did not alight therefrom to walk before it in such a dangerous place

in order to prevent any accident that might occur, he should at least have been on the lookout on the first car.

Under the conditions stated, any prudent and reasonable man would have taken these precautions; the defendants themselves acknowledge that they should have done so and that it was their duty to take them, and such are the precautions which jurisprudence has established for analogous cases.

In the absence of a statute or ordinance regulating the speed of trains, the running thereof at any speed does not constitute negligence *per se,* and the existence thereof depends on the circumstances of the case and the safety of passengers and the public, this rule being also applicable to cases where the cars are propelled and not drawn by the locomotive.

As a general rule, tracks are for the exclusive use of the company or corporation which owns them, except at crossings and on public thoroughfares; and when trains are operated on the streets of a city commonly used by pedestrians and vehicles, it is their duty to take precautions, unnecessary under other circumstances, against collisions, because the presence of such pedestrians or vehicles on the track should be presumed. Reasonable care, therefore, should be exercised, it being the duty of the company or corporation and of the employes thereof, when it is known or may be expected that persons are on the track, to exercise ordinary care and precaution commensurate with the probabilities of accident.

As a consequence of these principles, and although in the absence of statutory requirements the duty to give warning by bell or whistle of the approach of a train does not exist, this rule, however, is subject to circumstances that may increase the risk of accident, as in towns or cities, and to prevent which the exercise of reasonable care demands that these warnings be given. (33 Cyc., 735-782.)

From the statement of Mrs. Llorens it is seen that the engineer's attention was distracted and he did not reverse

the regulator until he reached the place in front of her house, when he had struck the cart and the man.

Moreover, the breaking of the cart and the fall of the coal man having occurred about 28 or 30 yards from the gate, and the train having come to a stop about 45 yards therefrom, if the precautions taken at the time of the ocular inspection, when the train ran only 25 or 30 meters beyond the gate, had been observed, perhaps the death of the coal man would have been averted.

In regard to the fact that the conduct of the coal man in placing his wagon on the track, when he could have placed it elsewhere in the street without danger, implies contributory negligence and relieves the defendants of responsibility, we shall say as before that when such track is laid on the level of the streets and squares it is of public use, and such contributory negligence does not therefore exist; and, moreover, the Penal Code provides punishment for those who wilfully or negligently cause the collision of trains without regard to the negligence of the person killed, considering only the conduct of those in charge of the train, because in these cases the immediate cause of the accident is either wilfulness or negligence.

For the reasons above stated the judgment should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary and del Toro concurred.

Mr. Justice Wolf dissented.